**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF TEXAS**
**HOUSTON DIVISION**

| | |
|---|---|
| **INNOSPEC INC. and INDEPENDENCE OILFIELD CHEMICALS, LLC,**<br>***Plaintiffs,***<br>**v.**<br>**SCIDEV ENERGY SERVICES, INC. (f/k/a HIGHLAND FLUID TECHNOLOGY, INC.),**<br>***Defendant.*** | **Civil Action No.** 26-10000<br>**JURY TRIAL DEMANDED** |

**<u>PLAINTIFFS' COMPLAINT FOR PATENT INFRINGEMENT</u>**

Plaintiffs Innospec Inc. and Independence Oilfield Chemicals, LLC (collectively, "Plaintiffs"), by and through their undersigned counsel, file this Complaint for Patent Infringement against Defendant SciDev Energy Services, Inc. (f/k/a Highland Fluid Technology, Inc.) ("SciDev"), demand a trial by jury on all issues so triable, and allege as follows, upon personal knowledge as to their own acts and upon information and belief as to all other matters:

**<u>NATURE OF THE ACTION</u>**

1. This is a civil action for patent infringement arising under the patent laws of the United States, 35 U.S.C. § 1 et seq., including 35 U.S.C. §§ 271, 281, 283, 284, and 285, based upon Defendant's direct, induced, contributory, and willful infringement of United States Patent No. 12,054,670, titled "Subterranean Formations" (the "'670 Patent"). A true and correct copy of the '670 Patent is attached to this Complaint as Exhibit A.

2. The '670 Patent claims a method of fracturing iron-rich subterranean formations—such as the Woodford Shale in Oklahoma—using a friction reducer polymer bearing a pendent O–S=O moiety to reduce or minimize the undesirable "gel-like goo" that has long plagued operators in those formations. Ex. A, 1:51–53; 14:33–52. On information and belief, Defendant makes,

markets, and sells a family of "Slik" friction reducers, including a product it has promoted as an iron tolerant friction reducer for iron-rich formations, that have been used on well after well in Oklahoma's Woodford Shale, both before and after the '670 Patent issued. Defendant has had actual notice of the '670 Patent and of Innospec's specific infringement contentions since no later than February 10, 2026, when SciDev acknowledged receipt of Innospec's January 21, 2026 cease-and-desist letter. Ex. E. Rather than engage in good faith, Defendant requested time for "due diligence" (*Id.*), then offered only a conclusory denial of infringement unsupported by any compositional data or testing (Ex. F), refused to provide compositional information or samples even under a non-disclosure agreement or through a neutral third-party tester, and ultimately stopped responding to Innospec altogether—all while continuing to supply and support the Accused Products. Innospec brings this action to stop Defendant's willful infringement and to recover the damages it has caused.

## <u>**THE PARTIES**</u>

3. Plaintiff Innospec Inc. ("Innospec") is a corporation organized and existing under the laws of Delaware, with its principal place of business located at 8310 South Valley Highway, Suite 350, Englewood, Colorado 80112.

4. Plaintiff Independence Oilfield Chemicals, LLC ("Independence") is a limited liability company organized and existing under the laws of Delaware. Independence Oilfield Chemicals, LLC is a wholly owned subsidiary of Innospec, with its principal place of business located at 2600 Technology Forest Boulevard, The Woodlands, Texas 77381.

5. Innospec is a global specialty chemistry company with manufacturing plants, research centers, and additional facilities in twenty-two countries. Innospec provides chemicals,

additives, and formulations for many different markets, including agrochemicals, construction, fuel, home care, metal extraction, oilfield, personal care, polymers, and waxes.

6. Innospec is an industry leader in oilfield services, with capabilities that range from development and design to manufacturing and delivery, encompassing a host of discrete chemical products and integrated fluid systems. Innospec develops, manufactures, and sells friction reducers for slickwater hydraulic fracturing, including in the Mid-Continent region of Oklahoma, where it competes directly with Defendant for the business of the same exploration and production operators.

7. Independence is the assignee of record of the ’670 Patent and owns legal title to the patent. Innospec is the parent company of Independence and, together with Independence, possesses all rights necessary to enforce the ’670 Patent and to sue for and recover all past, present, and future damages. Plaintiffs have standing to bring this action under 35 U.S.C. § 281.

8. On information and belief, Defendant SciDev Energy Services, Inc. (f/k/a Highland Fluid Technology, Inc.) is a corporation organized and existing under the laws of the State of Texas, with its principal place of business located at 5821 W. Sam Houston Parkway N., Houston, Texas 77041.

## **JURISDICTION AND VENUE**

9. This action arises under the patent laws of the United States, 35 U.S.C. §§ 1, *et seq.* This Court has original and exclusive subject-matter jurisdiction over this action pursuant to 28 U.S.C. §§ 1331 and 1338(a).

10. This Court has general and specific personal jurisdiction over Defendant. Defendant is organized under the laws of Texas and maintains its principal place of business in Houston, Texas, within this District, and it is therefore at home in Texas. Defendant has also

committed acts of infringement in this District and purposefully directed infringing activity from this District, including by marketing, offering for sale, selling, and providing technical support for the Accused Products from its Houston, Texas offices; supplying or supporting the Accused Products from Houston for use in the accused Oklahoma fracturing operations; and directing from Houston the deployment, dosing, and field support of the Accused Products in the accused applications. Innospec's claims arise out of and relate to these activities.

11. Defendant's Houston address identified above is located in Harris County, Texas, which lies within the Houston Division of this District, *see* 28 U.S.C. § 124(b)(2), and this action is therefore properly filed in the Houston Division.

12. Venue is proper in this District under 28 U.S.C. § 1400(b). SciDev is a Texas corporation whose principal place of business is in Houston, Harris County, Texas and it therefore resides in this District for purposes of 28 U.S.C. § 1400(b). Defendant maintains a regular and established place of business in Houston, Texas, and has committed acts of infringement in this District, including offering for sale, selling, marketing, supplying, and providing technical support for the Accused Products from that Houston place of business.

## <u>THE FACTUAL BASIS FOR THE CLAIMS</u>

### ***The '670 Patent***

13. On August 6, 2024, the United States Patent and Trademark Office ("USPTO") duly and legally issued the '670 Patent, titled "Subterranean Formations" (Ex. A, at (54)), naming Kimberley MacEwen, Kurt Hoeman, and Jeffrey C. Dawson as inventors.

14. Independence is the assignee of record of the '670 Patent, as reflected on the face of the patent, and owns the entire right, title, and interest in the '670 Patent.

15. The ’670 Patent is directed to a method of fracturing a subterranean formation susceptible to formation of undesirable “gel-like goo” (Ex. A, 1:51–53; 14:33–52) by contacting the formation with a fluid comprising a friction reducer polymer having a pendent group containing an O-S=O moiety (e.g., AMPS/ATBS—2-acrylamido-2-methylpropane sulfonic acid) covalently bonded, optionally via a linking group, to the polymer backbone. The claimed method addresses formations in which the formation water has Total Dissolved Solids (TDS) of at least 5,000 ppm and the formation rock includes $Fe(II)S_2$-containing minerals at a level greater than 0.1 wt%. The use of polymers carrying such an O-S=O moiety during hydraulic fracturing reduces and/or minimizes the undesirable gel-like goo routinely known to clog wells in iron-containing subterranean formations.

16. The ’670 Patent claims priority to U.S. Provisional Application No. 62/814,425, which was filed on March 6, 2019, and International Patent Application No. PCT/GB2020/050428, which was filed on February 24, 2020. The application was published as U.S. Patent Application Publication No. US 2022/0145169 A1 on May 12, 2022.

17. During prosecution of the ’670 Patent before the USPTO, the examiner—Primary Examiner Kumar R. Bhushan—examined the application in light of the prior art, including multiple United States patents and published applications such as U.S. Patent No. 5,674,817 (Brezinski, *et al.*), U.S. Patent No. 6,030,928 (Stahl), U.S. Patent Application Publication Nos. 2005/0155765 (Harris), 2009/0145607 (Li), 2012/0214714 (Whitwell), 2014/0352960 (Chung, *et al.*), and 2017/0114272 (Vo, *et al.*), as well as international publications WO 2017/096055 and WO 2017/187150. The examiner also considered non-patent literature, including Dulin, *et al.*, “Identification and Remediation of Produced Solids Accumulation Occurring After Massive Hydraulic Water Fracs,” Society of Petroleum Engineers, Paper SPE-173594-MS (March 2015),

and the International Search Report and Written Opinion for PCT/GB2020/050428 mailed May 6, 2020. *See* Ex. A, at (56). The ’670 Patent issued with 25 claims, each of which is presumed valid under 35 U.S.C. § 282.

18. As of the filing of this Complaint, no petition for *inter partes* review or post-grant review, and no request for *ex parte* reexamination, has been filed challenging the ’670 Patent, and no court or administrative body has held a claim of the ’670 Patent invalid or unenforceable.

19. Claim 1 of the ’670 Patent recites: “A method of fracturing a subterranean formation susceptible to formation of a undesirable gel-like goo, the method comprising: contacting the formation with a fluid (A) comprising a friction reducer polymer (PP) which includes a pendent group which includes a moiety O–S=O (I), and reducing and/or minimizing undersirable [sic] gel-like goo within the subterranean formation, wherein the sulphur atom of the moiety is covalently bonded, optionally via a linking atom or group, to the backbone of the polymer, and wherein formation water includes Total Dissolved Solids (TDS) of at least 5000 ppm; and formation rock within the subterranean formation includes rock having an $Fe(II)S_2$-containing mineral at a level of greater than 0.1 wt %.” Ex. A, 14:33–52.

20. Each of the 25 claims of the ’670 Patent is a method claim. Because the ’670 Patent claims only methods, the marking provisions of 35 U.S.C. § 287(a) do not limit Innospec’s recovery, and Innospec is entitled to recover damages for all infringement occurring on or after the August 6, 2024, issue date of the ’670 Patent.

***Hydraulic Fracturing and Undesirable Gel-like Goo***

21. Hydraulic fracturing is a process used to produce oil and gas from reservoirs such as coal beds, tight sandstones, and shales. A fracturing fluid is injected at a rate and pressure

necessary to induce fractures or cracks in the formation. Large volumes of water are pumped at high rates to induce the fractures or cracks.

22. To pump at high rates, small amounts of friction reducers are added to the fracturing fluid. Friction reducers are normally 100 to 1,000 parts per million (ppm) of polyacrylamide polymers and copolymers. The friction reducer-assisted fluids are referred to as “slickwater” and the process is referred to as slickwater fracturing.

23. Friction reducers are intended to reduce the friction in the wellbore during the drilling and stimulation process in unconventional reservoirs such as coal beds and shales. Cationic or anionic friction reducers reduce turbulence and minimize friction losses.

24. Once the hydraulic fracturing process is completed, aqueous fluids are expelled from the rock and return to the surface. These aqueous fluids may contain flow-back water (water contained in the fracturing fluid) or production brine (natural formation water or connate water that contain minerals that were part of the subsurface formation), sand, oil, friction-reducer polymers, and treatment chemicals (scale, corrosion, clay inhibitors, etc.).

25. In some wells, the back-produced waters contain iron, and an undesirable gel-like goo may be produced from the well bore. The undesirable gel-like goo may contain a globular mass comprising proppant, clay, residual quasi-iron crosslinked friction reducer, iron laden asphaltenes, oil in singular or combination, and may also have liquids such as brines, formation water, and hydrocarbons. The undesirable gel-like goo may be a semi-solid (such as a rubbery semi-solid), tacky, or gelatinous.

26. During the early stages of oil production, after the hydraulic fracturing process, the undesirable gel-like goo is formed within the well bore, fracture network, proppant pack, etc.

27. The problem of undesirable gel-like goo formation in iron-rich subterranean environments was well-recognized in the oil and gas industry. In Oklahoma, semi-solid polymer accumulations—commonly referred to in the industry as "goo" or "gummy bears"—were widely reported when operators began using polyacrylamide friction reducers in formations such as the Woodford Shale, which is known to have appreciable concentrations of pyrite ($FeS_2$), a primary source of iron in the formation mineralogy. The '670 Patent itself identifies formations within Oklahoma, including the Woodford play (also referred to as the Woodford Shale or Cana-Woodford Shale), as formations susceptible to the formation of undesirable gel-like goo. Ex. A, 2:1–3; 9:42–48. A 2015 Society of Petroleum Engineers paper cited on the face of the '670 Patent likewise reported an increasingly noticeable occurrence of rubbery, polyacrylamide-containing produced solids "particularly in the Woodford shale formation," reported X-ray diffraction results for Woodford shale drill cuttings showing approximately 2 wt% pyrite and 2 wt% marcasite (both $Fe(II)S_2$ minerals), and reported flowback-water analyses with dissolved-metal concentrations well above 5,000 ppm. *See* James Dulin et al., *Identification and Remediation of Produced Solids Accumulation Occurring After Massive Hydraulic Water Fracs*, SPE-173594-MS, tbls. 1–2 (Soc'y of Petroleum Eng'rs 2015), Ex. G.

28. These accumulations of gel-like goo can plug separators, chokes, tubing, casing, and other downhole equipment, causing significant production losses. Prior remediation approaches, such as chemical treatments to break down the goo after it forms, have proven to be only short-term fixes. The '670 Patent addresses this longstanding industry problem by claiming a method of fracturing that uses friction reducer polymers containing an O-S=O moiety to reduce and/or minimize the formation of such undesirable gel-like goo.

***Defendant's Infringing Products***

29. SciDev Ltd. is an Australian publicly traded company engaged in the global water and wastewater treatment market. In January 2020, SciDev Ltd. acquired Highland Fluid Technology, Inc., a Houston, Texas-based company that supplies bespoke chemistry and services for fluid recycling and water reuse in the U.S. onshore oil and gas sector. Through this acquisition, SciDev Ltd. expanded its North American footprint and entered the U.S. friction-reducer and oilfield chemistry market.

30. Following the acquisition, the combined SciDev business began marketing, selling, and supporting friction-reducer products and related oilfield chemistry services throughout the United States, including in Oklahoma.

31. Defendant makes, has made, markets, sells, offers for sale, and provides technical field support for a family of friction-reducer products sold under the "Slik" family of trade names for use in hydraulic fracturing operations. A true and correct copy of Defendant's product literature for the Slik Friction Reducer product line is attached as Exhibit D. Based on publicly available product literature, well-completion disclosures, and Defendant's refusal to provide complete compositional information, the Accused Products include at least the following:

a. On information and belief, FerriSlik 150, marketed by SciDev as an anionic iron tolerant friction reducer providing effective friction reduction while mitigating iron-related issues, ensuring optimal performance in iron-rich formations and where produced water is being utilized (Ex. C);

b. The broader "Slik Friction Reducer" product line, described in SciDev's own marketing materials as "based on fast-hydrating, highly-active ATBS co-polymer

and available in dry and liquid blended slurries" (Ex. D; *see also* Ex. C) (ATBS is an industry synonym for AMPS, acrylamido-2-methylpropane sulfonic acid); and

c. Additional "Slik"-family friction reducers, including xSlik 622, xSlik 620, xSlik 619, xSlik 621, xSlik 636, CarrySlik 5.7.2, and CarrySlik 5.6, together with any other friction-reducer product made, used, sold, or offered for sale by Defendant that contains a polymer bearing a pendent O–S=O moiety and are used, sold, offered for sale, promoted, or supported by Defendant for use in iron-rich, high-TDS formations in the accused manner (collectively with the products identified in subparagraphs (a) and (b), the "Accused Products").

32. On information and belief, each Accused Product contains a friction reducer polymer that is a copolymer of acrylamide and AMPS/ATBS (2-acrylamido-2-methylpropane sulfonic acid, also known as acrylamido tertiary-butyl sulfonic acid) or a similar sulfonated monomer. The AMPS/ATBS repeat unit carries a pendent sulfonate ($–SO_{3}^{-}$) group—which includes the claimed O–S=O moiety—whose sulphur atom is covalently bonded to the polymer backbone via a linking group, as required by Claim 1 of the '670 Patent. The '670 Patent identifies copolymers of acrylamido-methyl-propane sulfonate and acrylamide as a preferred embodiment of the claimed friction reducer polymer, and its examples confirm that an acrylamide/ATBS copolymer resists the iron-induced flocculation that produces gel-like goo. Defendant itself describes its Slik friction-reducer line as "based on fast-hydrating, highly-active ATBS co-polymer." Ex. D; *see also* Ex. C.

33. Publicly reported well-completion chemical disclosures for wells treated with the Accused Products are consistent with these allegations. For example, the disclosures for xSlik 622 and xSlik 636 report polyacrylamide (CAS No. 9003-05-8) together with hydrocarbon carrier

fluids characteristic of emulsion or slurry friction-reducer formulations, while the identity of the remaining polymer constituents of the Accused Products—and the entire composition of FerriSlik 150 and xSlik 621—is withheld as proprietary. Ex. H. Defendant has exclusive possession of the precise compositions of the Accused Products and has refused Innospec's repeated requests to disclose them, whether directly under a non-disclosure agreement or through a neutral third-party tester.

34. On information and belief, the Accused Products have been used in hydraulic fracturing operations on at least 158 wells operated by Devon Energy in Blaine, Canadian, Kingfisher, and Custer Counties, Oklahoma, in the Mid-Continent/Anadarko Basin region, accounting for more than 200 product well occurrences between 2022 and 2025. *Id.* Those well occurrences include at least 101 for xSlik 622, 61 for CarrySlik 5.7.2, 40 for xSlik 620, 5 for xSlik 636, 4 for CarrySlik 5.6, 3 for FerriSlik 150, and 1 each for xSlik 619 and xSlik 621, supplied under both the Highland and SciDev names. *Id.* Use of the Accused Products continued after the '670 Patent issued on August 6, 2024, including on Devon wells in multiple months during the remainder of 2024 and throughout 2025, when Defendant supplied xSlik 622 for at least 37 additional Devon wells. On information and belief, the formations treated on these wells—including the Woodford Shale—have high iron content ($Fe(II)S_2$-containing pyrite and marcasite at levels greater than 0.1 wt%) and high-TDS formation water (exceeding 5,000 ppm), and they are precisely the susceptible formations described and claimed in the '670 Patent.

35. Defendant specifically designed and promotes the Accused Products for these formations. On information and belief, Defendant markets FerriSlik 150—whose very name denotes iron-related functionality—as an anionic iron tolerant friction reducer that provides friction reduction while mitigating iron-related issues in iron-rich formations, which is the very

problem the ’670 Patent solves. On information and belief, Defendant promotes the other Accused Products to the same Oklahoma operators for the same iron-rich, high-TDS applications.

36. On information and belief, when the Accused Products are used as instructed and intended by Defendant—in slickwater hydraulic fracturing of iron-rich, high-TDS subterranean formations susceptible to undesirable gel-like goo, such as the Woodford Shale in Oklahoma—each limitation of at least Claim 1 of the ’670 Patent is met. Specifically:

a. a subterranean formation susceptible to formation of undesirable gel-like goo is fractured, and the formation is contacted with a fluid comprising a friction reducer polymer, namely, a fracturing fluid containing an Accused Product;

b. the friction reducer polymer includes a pendent group containing an O-S=O moiety (the sulfonate group of the AMPS/ATBS repeat unit), wherein the sulphur atom of the moiety is covalently bonded, via a linking group, to the backbone of the polymer;

c. undesirable gel-like goo within the subterranean formation is reduced and/or minimized—the very result Defendant advertises, on information and belief, when it promotes the Accused Products as iron tolerant friction reducers that mitigate iron-related issues;

d. the formation water includes TDS of at least 5,000 ppm; and

e. the formation rock includes $Fe(II)S_2$-containing minerals at a level greater than 0.1 wt%.

37. On information and belief, the use of the Accused Products in the manner alleged above also practices one or more dependent claims of the ’670 Patent, including at least Claim 2 because the Woodford Shale and similar Oklahoma formations are formations previously known

to form gel-like goo or similar in mineralogy to such formations; Claim 11 because the Accused Products include acrylamide/AMPS or acrylamide/ATBS copolymers; Claim 22 because the accused slickwater fracturing operations pump fluid into a wellbore at a pressure sufficient to create a fracture network; and Claim 23 because the accused operations are slickwater fracturing operations.

38. A preliminary element-by-element claim chart mapping the Accused Products to the limitations of Claim 1 of the ’670 Patent is attached as Exhibit B. The claim chart is based on publicly available information and is provided without the benefit of discovery. Innospec reserves the right to assert additional claims and to identify additional infringing products as discovery proceeds.

39. Defendant does not merely sell the Accused Products as commodity chemicals. Defendant actively instructs, encourages, and facilitates its customers’ infringing use of the Accused Products through product-specific technical materials, on-site field support, and marketing literature that teach operators to use these products precisely as claimed by the ’670 Patent—namely, as friction reducers in slickwater fracturing of iron-rich subterranean formations with high-TDS formation water, for the purpose of reducing or preventing the formation of undesirable gel-like goo. Defendant’s principal and intended commercial use for the Accused Products is the accused application: slickwater fracturing in high-brine, high-iron environments where the claimed method is practiced.

40. SciDev has, in prior correspondence, taken the position that it does not itself “perform hydraulic fracturing services” and therefore does not “directly practice the claimed methods.” *See* Ex. F (Email from Gene Pierson, Pierson IP LLP, to Sailesh K. Patel, ArentFox Schiff LLP (April 10, 2026)). A true and correct copy of that email chain is attached as Exhibit F.

That position does not insulate Defendant from liability. On information and belief, Defendant itself performs the claimed methods by conducting field trials of the Accused Products on Oklahoma wells and by providing on-site personnel and services that select, dose, blend, deliver, or supervise delivery of the Accused Products into fracturing fluid pumped into iron-rich, high-TDS formations. If any step is performed by an operator or pressure-pumping contractor, Defendant directs or controls that performance by conditioning the operator's receipt of the benefits of the Accused Products upon use in the prescribed manner and by establishing the manner and timing of that performance through product-specific dosing instructions, field supervision, and technical support. Defendant is liable for inducing and contributing to its customers' direct infringement under 35 U.S.C. §§ 271(b) and (c).

***Defendant's Notice of the '670 Patent and Refusal to Engage in Good Faith***

41. On January 21, 2026, counsel for Innospec (Sailesh K. Patel, ArentFox Schiff LLP) sent a detailed cease-and-desist letter via Federal Express to "SciDev USA (Highland Fluid Technology, LLC)," Attn: General Counsel or CEO, at 11221 Cutten Road, Building 5, Houston, Texas 77066 (the "January 21 Letter"). Ex. C, at 1. SciDev acknowledged receipt of the January 21 Letter no later than February 10, 2026. Ex. E. The January 21 Letter identified and enclosed a copy of the '670 Patent, specifically identified SciDev's FerriSlik-brand and "Slik Friction Reducer" AMPS/ATBS-containing friction reducers as infringing, quoted SciDev's own marketing descriptions (FerriSlik as "an anionic iron tolerant friction reducer," and the Slik product line as "based on fast-hydrating, highly-active ATBS co-polymer"), asserted direct infringement under § 271(a) and indirect infringement under §§ 271(b) and (c), demanded immediate cessation of all infringing activities, and requested a written response within ten

business days. Ex. C. The January 21 Letter also included a litigation-hold and document-preservation notice. *Id.* A true and correct copy of the January 21 Letter is attached as Exhibit C.

42. On February 10, 2026, SciDev acknowledged receipt of the January 21 Letter and requested further discussion. Counsel for Innospec and counsel for SciDev (Gene Pierson, Pierson IP LLP) thereafter held a telephonic conference, during which SciDev's counsel requested additional time to conduct due diligence. Ex. E.

43. On February 27, 2026, SciDev's counsel represented in writing that SciDev was "currently conducting due diligence to determine whether its product may infringe the '670 patent," anticipated needing approximately 30 additional days, and stated that SciDev had "voluntarily ceased marketing, advertising, manufacturing, using, offering for sale, importing, or exporting its FerriSlik products" identified in the cease-and-desist letter. Ex. E (Email from Gene Pierson, Pierson IP LLP, to Sailesh K. Patel, ArentFox Schiff LLP (Feb. 27, 2026)). A true and correct copy of that email chain is attached as Exhibit E.

44. On April 9, 2026—after more than 30 days elapsed with no further substantive response—Innospec's counsel sent a follow-up email demanding (within 5 business days) the results of SciDev's diligence review and confirmation that FerriSlik marketing and sales remained ceased. Ex. F. The April 9 email expressly warned that Innospec was prepared to pursue all available legal remedies, including filing a patent infringement action in federal court seeking injunctive relief, compensatory and enhanced damages, and attorney's fees, if a satisfactory response was not received. *Id.* On April 10, 2026, SciDev's counsel responded that, after its review, SciDev did not believe its products infringe, listing claim limitations it contended were not met and asserting that SciDev does not itself perform hydraulic fracturing services. *Id.* SciDev did not provide any compositional data, test results, or other factual support for that conclusion.

45. In May 2026, counsel for the parties engaged in further discussions to try to resolve the dispute without litigation. Consistent with Federal Rule of Evidence 408, Innospec does not plead the substance of any compromise negotiations in this Complaint.

46. Notwithstanding SciDev's February 27, 2026 representation regarding its "FerriSlik" products (Ex. E), industry well-completion data compiled and analyzed by Innospec confirmed that Defendant's other Slik-family friction reducers—including xSlik 622, xSlik 620, xSlik 619, xSlik 621, xSlik 636, CarrySlik 5.7.2, and CarrySlik 5.6, supplied under both the Highland and SciDev names—were used extensively on Devon Energy wells in Blaine, Canadian, Kingfisher, and Custer Counties, Oklahoma, from 2022 through 2025, including after the '670 Patent issued. Ex. H. SciDev's representation regarding FerriSlik thus did nothing to address the bulk of Defendant's infringing activity.

47. On or about May 30 through June 1, 2026, Innospec's counsel sent SciDev's counsel a further email, with supporting field-data exhibits, identifying these additional Slik-family products (xSlik 622, xSlik 620, xSlik 619, xSlik 621, xSlik 636, CarrySlik 5.7.2, and CarrySlik 5.6) as also infringing the '670 Patent, and requesting technical specifications, compositional data, or product samples within ten business days under a non-disclosure agreement that Innospec offered to enter to protect any confidential information.

48. On June 5, 2026, SciDev's counsel responded, disagreeing with the expanded infringement allegations, refusing to provide any compositional data or samples on the asserted ground of trade-secret protection, and asserting invalidity based on U.S. Patent No. 4,540,510 (the "'510 Patent") and other unidentified alleged prior art and prior use purportedly dating to 2013–2017.

49. On June 9, 2026, Innospec's counsel responded in writing. Innospec explained that SciDev's blanket refusal to provide product information was inconsistent with good-faith negotiations, particularly because SciDev had itself acknowledged that exchanging product samples under a non-disclosure agreement is "routine in the industry" (Ex. I (Letter from Sailesh K. Patel, ArentFox Schiff LLP, to Gene Pierson, Pierson IP LLP (June 9, 2026)), at 1 (quoting SciDev)) and because the same information would be discoverable in litigation in any event. To eliminate any legitimate confidentiality concern, Innospec offered, as an alternative, to have an agreed independent third party test samples of the Accused Products and report only whether they meet the claim limitations, without disclosing SciDev's formulations to Innospec. Innospec also rebutted SciDev's '510 Patent theory in detail: the '510 Patent (issued in 1985) discloses thickener compositions of AMPS homopolymers blended with water-soluble polymers to enhance fluid viscosity, and it does not disclose or suggest the use of such polymers as friction reducers, the treatment of iron-rich Fe(II)$S_2$-containing formations, the reduction or minimization of gel-like goo, the claimed formation-water and formation-rock characteristics, or AMPS-acrylamide copolymers. Innospec requested a response within seven days. *See* Ex. I, at 1–3. A true and correct copy of the June 9, 2026 letter is attached as Exhibit I.

50. SciDev did not agree to either NDA-protected disclosure or independent third-party testing. On June 23, 2026, SciDev's counsel again disagreed with Innospec's infringement contentions and reiterated undisclosed prior-art and prior-use positions purportedly dating to at least 2013, without identifying the alleged prior use or providing any compositional information. Ex. J.

51. Innospec continued its efforts to resolve this dispute without litigation, including at an in-person meeting with SciDev's representatives and counsel in Houston, Texas, in September

2026, and in follow-up written correspondence dated September 11 and September 24, 2026. Consistent with Federal Rule of Evidence 408, Innospec does not plead the substance of those compromise communications. As of the date of this Complaint, Defendant has not responded to Innospec's September 24, 2026 correspondence.

52. As of the date of this Complaint, Defendant has never provided Innospec with any written compositional information, technical specifications, or product samples for any of the Accused Products; has not agreed to independent third-party testing; has not provided a claim chart or any element-by-element explanation for any reference or alleged prior use that it contends invalidates any claim of the '670 Patent; and has not ceased its infringing conduct. On information and belief, Defendant continues to make, market, sell, offer for sale, and support the Accused Products, for use in the iron-rich, high-TDS Oklahoma formations claimed in the '670 Patent.

53. Innospec has directed its pre-suit enforcement communications solely to Defendant and its counsel. Innospec has not communicated with any customer of Defendant regarding Defendant's products or the '670 Patent.

54. Defendant's infringement of the '670 Patent has been knowing, deliberate, and willful. Since no later than February 10, 2026—when SciDev acknowledged receipt of Innospec's January 21, 2026 cease-and-desist letter (Ex. E; Ex. C)—Defendant has had actual, detailed knowledge of the '670 Patent, its claims, and the specific basis for Innospec's allegations that the Accused Products infringe those claims. Defendant has had knowledge of the additional Slik-family Accused Products' alleged infringement since at least June 5, 2026, when SciDev's counsel responded to Innospec's letter identifying those products, and, at the latest, as of the filing and service of this Complaint.

55. Despite that knowledge, Defendant did not modify its conduct to avoid infringement. Although SciDev's counsel asserted non-infringement and invalidity in correspondence, Defendant never supported those assertions with any compositional data, test results, or claim charts, and it refused every mechanism Innospec offered—including disclosure under a non-disclosure agreement and testing by a neutral third party—that would have allowed the infringement question to be resolved on the facts.

56. Despite full knowledge of the '670 Patent and the specific basis for Innospec's infringement allegations, Defendant has committed, and on information and belief continues to commit, acts of direct and indirect infringement. Defendant has continued to make, sell, offer for sale, and actively promote the Accused Products for use in the precise applications claimed by the '670 Patent, including slickwater fracturing in iron-rich, high-TDS environments such as the Woodford Shale in Oklahoma.

57. Defendant's infringement has been and continues to be willful, deliberate, and egregious. Defendant has continued to infringe after receiving actual notice of the '670 Patent and Innospec's detailed infringement contentions, and its post-notice conduct, including continued sales and support of the Accused Products for the accused applications while refusing to provide product information or to permit neutral testing, supports enhanced damages under 35 U.S.C. § 284.

58. Defendant's pre-suit conduct also supports a finding that this case is exceptional. Defendant requested time to conduct "due diligence" (Ex. E) and then offered only a conclusory denial of infringement (Ex. F); refused to provide the compositional information central to infringement; rejected confidentiality protections and neutral testing designed to eliminate its stated objections; asserted invalidity based on references and alleged prior uses that it declined to

chart or explain; and ultimately stopped responding to Innospec while continuing to profit from the Accused Products. Those facts support a finding that this case is exceptional under 35 U.S.C. § 285.

***Innospec's Injury and Entitlement to Relief***

59. Innospec and Defendant are direct competitors in the market for slickwater friction reducers sold to exploration and production operators in Oklahoma, including for iron-rich wells in Blaine, Canadian, Kingfisher, and Custer Counties. Industry well-completion data show that Innospec and Defendant supply friction reducers to operators in the same Oklahoma counties, including Devon Energy, which has been among the most active operators in the region.

60. Each sale of an Accused Product for use in iron-rich Oklahoma formations displaces a sale that Innospec was ready, willing, and able to make and erodes the price Innospec can command for its products. The patented feature drives the value of the Accused Products: Defendant markets them on the basis of their performance in iron-rich formations, and operators pay for that capability to avoid gel-like goo and the production losses and repeated remediation it causes. Innospec is entitled to recover damages adequate to compensate for Defendant's infringement, including lost profits and in no event less than a reasonable royalty, for all infringement since the '670 Patent issued on August 6, 2024.

61. Defendant's infringement has caused, and unless enjoined will continue to cause, irreparable harm to Innospec for which there is no adequate remedy at law, including loss of market share, loss of exclusivity in a market for which the '670 Patent provides the key differentiating technology, price erosion, and loss of customer relationships and goodwill with operators that make long-term supplier decisions. These harms are difficult to quantify and are compounded by the direct competition between the parties.

62. The balance of hardships favors Innospec, because Defendant has no legitimate interest in continuing to infringe a valid patent of which it has had notice since early 2026. The public interest favors enforcement of valid patent rights, and operators will continue to have access to the patented technology through Innospec's own products, so an injunction would not impair the fracturing of iron-rich formations.

**COUNT I**
**(Direct Infringement of U.S. Patent No. 12,054,670 – 35 U.S.C. § 271(a))**
**Against Defendant**

63. Innospec repeats and incorporates by reference the allegations of paragraphs 1 through 62 as if fully set forth herein.

64. The '670 Patent is valid and enforceable and is presumed valid under 35 U.S.C. § 282. The '670 Patent was duly examined by the USPTO in light of the prior art cited on its face, and no post-issuance challenge to the validity of any claim of the '670 Patent has been filed or sustained. The '670 Patent is in full force and effect.

65. Defendant has directly infringed, and continues to directly infringe, one or more claims of the '670 Patent, including at least Claims 1, 2, 11, 22, and 23, literally or under the doctrine of equivalents, in violation of 35 U.S.C. § 271(a), by performing each step of the claimed methods in the United States without authority, including by conducting field trials of the Accused Products and by providing on-site services in which Defendant's personnel dose and deliver the Accused Products into fracturing fluid pumped into iron-rich, high-TDS formations in Oklahoma, as alleged in paragraphs 31 through 40 above. Defendant is further liable for direct infringement to the extent that steps of the claimed methods are performed by operators or pressure-pumping contractors under Defendant's direction or control.

66. Defendant's direct infringement has caused, and unless enjoined will continue to cause, Innospec damages and irreparable harm, as alleged in paragraphs 59 through 62 above. Defendant's direct infringement has been willful, as alleged in paragraphs 54 through 58 above.

**COUNT II**
**(Induced Infringement of U.S. Patent No. 12,054,670 – 35 U.S.C. § 271(b))**
**Against Defendant**

67. Innospec repeats and incorporates by reference the allegations of paragraphs 1 through 66 as if fully set forth herein.

68. Defendant has actively induced, and continues to actively induce, infringement of one or more claims of the '670 Patent, including at least Claims 1, 2, 11, 22, and 23, in violation of 35 U.S.C. § 271(b). Defendant's customers—including Devon Energy and other exploration and production operators and their pressure-pumping contractors—directly infringe the '670 Patent by using the Accused Products as friction reducers in slickwater fracturing of iron-rich, high-TDS formations in Oklahoma, as alleged above. Defendant knowingly induces that direct infringement by, among other things, marketing the Accused Products for use in iron-rich formations and where produced water is being utilized; distributing product data sheets, technical literature, and dosing instructions that direct operators to use the Accused Products in the claimed manner; and providing on-site technical support and field assistance to ensure that the Accused Products are deployed in the Anadarko Basin and other iron-rich formations where the claimed method is practiced.

69. Defendant has had actual knowledge of the '670 Patent and of the infringing nature of its customers' use of the Accused Products since no later than February 10, 2026, and in no event later than the filing and service of this Complaint. Defendant has continued its inducing conduct after acquiring that knowledge, with the specific intent that its customers use the Accused

Products in the infringing manner, or with willful blindness to the high probability that such use infringes the ’670 Patent. Defendant’s refusal to disclose the composition of the Accused Products while continuing to promote them for iron-rich formations further evidences its deliberate indifference to Innospec’s patent rights.

70. Defendant’s inducement of infringement has caused, and unless enjoined will continue to cause, Innospec damages and irreparable harm, as alleged in paragraphs 59 through 62 above. Defendant’s inducement of infringement has been willful, as alleged in paragraphs 54 through 58 above.

**COUNT III**
**(Contributory Infringement of U.S. Patent No. 12,054,670 – 35 U.S.C. § 271(c))**
**<u>Against Defendant</u>**

71. Innospec repeats and incorporates by reference the allegations of paragraphs 1 through 70 as if fully set forth herein.

72. Defendant has contributed to, and continues to contribute to, the infringement of one or more claims of the ’670 Patent, including at least Claims 1, 2, 11, 22, and 23, in violation of 35 U.S.C. § 271(c), by selling and offering to sell within the United States the Accused Products, which constitute a material for use in practicing the patented methods and a material part of the invention. The friction reducer polymer bearing a pendent O–S=O moiety is the central element of the claimed methods, and the Accused Products supply that element. Defendant’s customers, including Devon Energy, directly infringe the ’670 Patent when they use the Accused Products as alleged above.

73. FerriSlik 150 and, on information and belief, each other specifically identified Accused Product used, sold, offered for sale, promoted, or supported for the accused iron-rich, high-TDS applications are especially made or especially adapted for use in infringing the ’670

Patent and are not staple articles or commodities of commerce suitable for substantial non-infringing use in those applications. On information and belief, Defendant designed and markets FerriSlik 150 as an iron-tolerant friction reducer for iron-rich formations and where produced water is being utilized, and Defendant promotes and supports the specifically identified Accused Products for slickwater fracturing in iron-rich, high-TDS formations susceptible to gel-like goo, such as the Woodford Shale. Innospec does not base this contributory-infringement claim on ordinary uses of generic friction reducers outside the accused iron-rich, high-TDS applications. Defendant has known since no later than Innospec's January 21 cease and desist letter that FerriSlik 150 and Slik friction reducers were made or accused of being adapted for use in infringing the '670 Patent, and it has known that the additional Slik-family Accused Products were accused of the same infringing use.

74. Defendant's infringement of the '670 Patent, as alleged in Counts I through III, has been and continues to be willful for the reasons alleged in paragraphs 54 through 58 above, entitling Innospec to enhanced damages of up to three times the amount found or assessed under 35 U.S.C. § 284 and supporting a finding that this case is exceptional under 35 U.S.C. § 285.

75. As a direct and proximate result of Defendant's infringement as alleged in Counts I through III, Innospec has suffered and will continue to suffer damages and irreparable harm. Innospec is entitled to recover damages under 35 U.S.C. § 284 adequate to compensate for the infringement, including lost profits and in no event less than a reasonable royalty, together with pre-judgment and post-judgment interest and costs, and to injunctive relief under 35 U.S.C. § 283.

## PRAYER FOR RELIEF

WHEREFORE, Innospec respectfully requests that the Court enter judgment in its favor and against Defendant, and grant the following relief:

A. A judgment that Defendant SciDev Energy Services, Inc. (f/k/a Highland Fluid Technology, Inc.) has infringed one or more claims of U.S. Patent No. 12,054,670, directly and indirectly by inducing and contributing to infringement, in violation of 35 U.S.C. §§ 271(a), (b), and (c);

B. A judgment that Defendant's infringement of the '670 Patent has been willful;

C. Pursuant to 35 U.S.C. § 283, permanent injunctive relief, and such preliminary injunctive relief as may be warranted, enjoining Defendant, its subsidiaries, affiliates, divisions, officers, agents, servants, employees, directors, partners, representatives, and all parties in active concert or participation with Defendant, from infringing the '670 Patent, including by making, having made, using, selling, offering for sale, distributing, or importing into the United States the Accused Products, or any product not more than colorably different, for use in fracturing iron-rich subterranean formations, and from inducing or contributing to such infringement by others;

D. Pursuant to 35 U.S.C. § 284, an award of damages adequate to compensate Innospec for Defendant's infringement from August 6, 2024 through the date of judgment, including lost profits and in no event less than a reasonable royalty, together with an accounting and an award of supplemental damages for any infringing activity not presented at trial; alternatively, to the extent any notice or marking limitation is found to apply, damages for infringement after Defendant received actual notice of the '670 Patent and Innospec's infringement contentions;

E. Pursuant to 35 U.S.C. § 284, an award of enhanced damages of up to three times the amount of damages found or assessed, in light of Defendant's willful infringement;

F. In the event a permanent injunction is not granted in full, an award of an ongoing royalty for Defendant's continued infringement after judgment, at a rate that accounts for Defendant's willful infringement;

G. Pursuant to 35 U.S.C. § 285, a declaration that this case is exceptional and an award to Innospec of its reasonable attorneys' fees;

H. An award of Innospec's costs and of pre-judgment and post-judgment interest on all damages at the maximum rate allowed by law; and

I. Such other and further relief as the Court deems just and proper.

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38(b) and Local Rule 38.1, Innospec demands a trial by jury of all issues raised by this Complaint that are triable by jury.

Respectfully submitted,

/s/Bruce C. Morris

Bruce C. Morris
Texas State Bar No. 14469850
Kane Russell Coleman Logan PC
5151 San Felipe Street, Suite 800
Houston, Texas 77056
Telephone: (713) 425-7450
Facsimile: (713) 425-7700
Email: bmorris@krcl.com

**ATTORNEY-IN-CHARGE
FOR PLAINTIFFS INNOSPEC INC.
AND INDEPENDENCE OILFIELD
CHEMICALS, LLC**

**OF COUNSEL:**

Howard J. Susser (pro hac vice forthcoming)
ARENTFOX SCHIFF LLP
800 Boylston Street, 32nd Floor
Boston, MA 02199
Telephone: (617) 973-6119
howard.susser@afslaw.com

Sailesh K. Patel (pro hac vice forthcoming)
Gabriella M. Salek (pro hac vice forthcoming)
ARENTFOX SCHIFF LLP
233 South Wacker Drive, Suite 7100
Chicago, IL 60606
Telephone: (312) 258-5583
Facsimile: (312) 258-5600
sailesh.patel@afslaw.com
gabriella.salek@afslaw.com

Taniel E. Anderson (pro hac vice forthcoming)
ARENTFOX SCHIFF LLP
1717 K Street, NW
Washington, DC 20006
Telephone: (202) 857-6000
taniel.anderson@afslaw.com

*Of Counsel for Plaintiffs Innospec Inc.*
*and Independence Oilfield Chemicals, LLC*